IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:21-CV-227-RJ

TALVI FARMER,

              Plaintiff/Claimant,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

              Defendant.

ORDER

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-21, -23] pursuant to Fed. R. Civ. P. 12(c). Claimant Talvi Farmer ("Claimant") filed this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the determination that she was no longer disabled after a prior award of disability and Disability Insurance Benefits ("DIB"). Claimant responded to Defendant's motion, [DE-25], and the time for further briefing has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the case is remanded to the Acting Commissioner for further proceedings.

## I. STATEMENT OF THE CASE

In a September 20, 2011 decision (the "comparison point decision" or "CPD"), Claimant was found to be disabled as of June 3, 2011. (R. 15). On February 14, 2019, it was determined that Claimant's disability ended on February 1, 2019, and the determination was upheld on

reconsideration. (R. 15, 58–66, 69, 72–83). A hearing before the Administrative Law Judge ("ALJ") was held on May 6, 2020, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared by telephone and testified. (R. 15, 34–57). On September 22, 2020, the ALJ issued a decision finding Claimant's disability ended on February 1, 2019, and she had not become disabled again since that date. (R. 12–31). On March 16, 2021, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is

limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The initial disability determination, where the issue is whether a claimant is disabled and entitled to Social Security benefits in the first place, is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written

3

decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

Once a claimant has been found disabled under the Act, a presumption of continuing disability arises. *See Bellamy v. Sec'y of Health & Human Servs.*, 755 F.2d 1380, 1381 (9th Cir. 1985) (citation omitted); *see also Modlin v. Saul*, No. 2:18-CV-57-FL, 2020 WL 2848184, at *2 (E.D.N.C. Feb. 6, 2020) (citing *Bellamy*), *rec. adopted*, 2020 WL 1321475 (E.D.N.C. Mar. 19, 2020); *Packer o/b/o G.G.P. v. Saul*, No. 3:19-CV-257, 2019 WL 4458581, at *2 (S.D. W. Va. Aug. 29, 2019), *rec. adopted*, 2019 WL 4458864 (S.D. W. Va. Sep. 17, 2019); *Sykes v. Colvin*, No. 5:15-CV-228-RN, 2016 WL 3129174, at *2 (E.D.N.C. June 2, 2016). The Commissioner may not terminate benefits unless substantial evidence demonstrates sufficient medical improvement in a claimant's impairments such that the claimant is able to engage in substantial gainful activity. *See* 42 U.S.C. §§ 423(f), 1382c(a)(4)(A); 20 C.F.R. § 404.1594.

To determine whether a claimant continues to be disabled, an ALJ follows an eight-step sequential evaluation process for DIB claims and a seven-step process for SSI claims. The evaluation processes are essentially the same with the exception of the first step regarding substantial gainful activity, which applies only to DIB claims. The steps are as follows:

> (1) Is the claimant presently engaged in substantial gainful activity? If so, and any applicable trial work period has been completed, the claimant's disability ends. If not, proceed to step two.
>
> (2) Does the claimant have an impairment, or combination of impairments, which meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant's disability continues. If not, proceed to step three.
>
> (3) Has there been medical improvement as shown by a decrease in the medical severity of the impairment(s) present at the time of the CPD? If so, proceed to step four. If not, proceed to step five.

4

(4) Was any medical improvement related to the ability to work (i.e., has there been an increase in the claimant's [RFC])? If so, proceed to step six. If not, proceed to step five.

(5) Is there an exception to medical improvement? If not, the claimant's disability continues. If an exception from the first group of exceptions to medical improvement applies (i.e., substantial evidence shows that the claimant has benefitted from "advances in medical or vocational therapy or technology" or "undergone vocational therapy" if either is "related to [the] ability to work"), *see* 20 C.F.R. §§ 404.1594(d) & 416.994(b)(3), proceed to step six. If an exception from the second group applies (i.e., disability determination was fraudulently obtained, claimant was uncooperative, unable to be found, or failed to follow prescribed treatment), *see* 20 C.F.R. §§ 404.1594(e) & 416.994(b)(4), the claimant's disability ends.

(6) Is the claimant's current combination of impairments severe? If so, proceed to step seven. If not, the claimant's disability ends.

(7) Does the claimant possess the [RFC] to perform claimant's past relevant work? If so, the claimant's disability ends. If not, proceed to step eight.

(8) Does the claimant's [RFC], when considered with the claimant's age, education, and work experience, allow the claimant to do other work? If so, the claimant's disability ends. If not, the claimant's disability continues.

*Sykes*, 2016 WL 3129174, at *2–3 (citing 20 C.F.R. §§ 404.1594(f), 416.994(b)(5)). In an action considering termination of benefits, the claimant still has the burden to prove disability, but the Commissioner has the burden of producing evidence to meet or rebut the presumption that the claimant continues to be disabled. *Id.* at *3 (citing *Bellamy*, 755 F.2d at 1381).

In this case, Claimant alleges the following errors: (1) the ALJ failed to account in the RFC for Claimant's need to elevate her bilateral lower extremities; (2) the ALJ's appointment violates the Appointments Clause; and (3) the structure of the SSA is constitutionally invalid. Pl.'s Mem. [DE-22] at 4–25.

## IV. ALJ'S FINDINGS

At step one, the ALJ found Claimant had not engaged in substantial gainful activity through

5

Case 5:21-cv-00227-RJ    Document 26    Filed 09/16/22    Page 5 of 12

the date of decision. (R. 17). At the time of the CPD, Claimant had the medically determinable impairment of Human Immunodeficiency Virus ("HIV"), which was previously found to meet Listing 14.08B7. *Id.* The ALJ determined that since February 1, 2019, Claimant had the current severe impairments of HIV, obesity, and degenerative disc disease of the lumbar spine with radiculopathy, and the non-severe impairments of urinary tract infections, major depressive disorder, and anemia. *Id.* However, the ALJ concluded that these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and medical improvement occurred on February 1, 2019, due to a decrease in the medical severity of Claimant's HIV. (R. 18–20). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in mild limitations in understanding, remembering, or applying information; interacting with others; adapting or managing oneself; and concentrating, persisting, or maintaining pace. (R. 19–20).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding that since February 1, 2019, Claimant had the ability to perform light work[1] except she can only occasionally kneel, crouch, and crawl. (R. 21–24). In making this assessment, the ALJ found Claimant's statements about her limitations not entirely consistent with the objective medical and other evidence. (R. 22). At step four, the ALJ concluded that since February 1, 2019, Claimant could perform the requirements of her past relevant work as a hand packager. (R. 24). Alternatively, at

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

6

step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant was capable of performing other jobs that exist in significant numbers in the national economy. (R. 25–26). Accordingly, the ALJ found that Claimant's disability ended on February 1, 2019. (R. 26).

## V. DISCUSSION

### A. Claimant's Need to Elevate Her Lower Extremities

Claimant contends the ALJ failed to account for in the RFC her need to elevate her bilateral lower extremities, despite Claimant's assertion and documentation in the medical records that she cannot stand for long periods because her feet swell, she utilizes compression socks, she has to prop up her feet daily for about three hours due to swelling, and mild edema was noted on examinations. Pl.'s Mem. [DE-22] at 4–9; Pl.'s Resp. [DE-25] at 4–5. Defendant contends that Claimant failed to prove she had a functional limitation related to her alleged swelling, and the ALJ's RFC is supported by the evidence. Def.'s Mem. [DE-24] at 24–26.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g.,

7

daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

Claimant alleged in her initial claim for disability in 2011 that she experienced swelling in her legs and feet and she could not stand for too long. (R. 58). In January 2019, Claimant's mother completed a report on Claimant's behalf indicating that swelling in her legs affected her sleep and walking and that she utilized compression socks. (R. 214–21). At the May 2020 administrative hearing, Claimant testified that she "can't hardly cook" and her mother does the chores around the house because Claimant cannot stand for a long period of time due to swelling in her feet and pain in her lower back. (R. 50). Claimant's attorney noted for the record that her shoes were not tied because her feet were swollen, and Claimant explained that about three times a week her feet were too swollen to put on shoes. (R. 51). Claimant also testified that she had to elevate her feet every day for about three hours, and about twice a week she had difficulty walking dues to swelling and pain in her feet. (R. 51–52).

The medical records also documents Claimant's complaints of swelling in her feet and ankles. On January 17, 2019, Claimant complained to her treatment provider of leg pain when

8

walking "for a while," and compression stockings were ordered. (R. 285). At a February 2019 orthopedics visit, Claimant was noted to elevate her feet for swelling and had mild edema in both ankles. (R. 747–48). At a March 4, 2019 visit with Claimant's infectious disease doctor, Claimant again complained that when she "walks for a while" she experiences lower extremity pain and edema. (R. 292). At an orthopedics visit relative to knee pain later in March 2019, Claimant was noted to have mild edema in both ankles without signs of pitting and was advised to elevate her legs to decrease swelling around the feet and ankles. (R. 750). Claimant repeated her complaints of edema and leg pain with walking to her treatment providers in May and August 2019, mild edema was again noted, and a low sodium diet, ankle exercises, elevation, and compression stockings were discussed. (R. 688, 702, 736, 740–41).

The ALJ did not discuss Claimant's testimony that the swelling in her legs and feet limited her ability to stand, walk, and perform household chores and required her to elevate her legs for relief.[2] (R. 22). The ALJ was required to consider Claimant's subjective statements. *See* 20 C.F.R. § 404.1529(a) ("We will consider all of your statements about your symptoms . . . ."). While not every piece of evidence must be discussed, the ALJ should have explained how Claimant's statements were evaluated here because they were relevant to a contested function, i.e., her ability to stand and walk consistent with the requirements of light work given her allegations of lower extremity swelling that required her to elevate her legs for three hours a day. *See Alexander v. Berryhill*, No. 5:17-CV-362-D, 2018 WL 3433292, at *9 (E.D.N.C. June 18, 2018) (finding the

---

[2] The ALJ did state that while Claimant alleged her impairments affect her ability to work, she was working as a certified nurse assistant ("CNA"). (R. 22). This finding comes from two treatment notes in the record dated July 1, 2016 and February 27, 2017, roughly two or more years prior to the date when the ALJ found Claimant's disability had ended and more than three years before the date of the ALJ's decision. (R. 477, 531). Importantly, these treatment notes are internally inconsistent, where each states both that Claimant "is working," (R. 477, 531), and "isn't working," (R. 480, 534), as a CNA. Accordingly, they do not constitute substantial evidence to support the ALJ's RFC determination that Claimant can perform a reduced range of light work because she was working as a CNA.

ALJ erred by failing to discuss relevant evidence favorable to the claimant, including her testimony regarding how her impairments impacted her functioning), *report and recommendation adopted*, 2018 WL 3430675 (E.D.N.C. July 16, 2018). The ALJ acknowledged that Claimant was treated for leg pain, but noted her walking pattern, range of motion, and strength were normal on repeated examinations. (R. 22–23). However, as discussed above, Claimant reported to her treatment providers that she experienced pain and edema in her feet and legs with *increased walking*, and mild edema was present on examination even when presumably she was not engaged in increased walking. Furthermore, it is not apparent how findings of normal strength and range of motion would address the alleged need to elevate her legs *due to edema*, which could reasonably be expected to limit her ability to stand or walk. *See Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (noting the ALJ's failure to explain how test results cited were relevant to the functional limitations alleged, e.g., how a normal gait bears nexus to a complaint of shoulder pain).

The evidence cited by Defendant does not sufficiently explain how the ALJ arrived at the RFC determination. Def.'s Mem. [DE-24] at 24–26. Defendant points to a January 17, 2019 note from Claimant's treatment provider indicating she had no physical impairment, (R. 267), which is contradicted by the ALJ's own findings that Claimant had physical impairments of HIV, obesity, and degenerative disc disease with radiculopathy, (R. 17). Defendant also cites the state agency medical consultant's decisions that Claimant could perform light work, which were relied upon by the ALJ in formulating the RFC. (R. 58–66, 326–33). However, Dr. Virgili's decision on initial review predates the majority of the medical evidence regarding the pain and swelling in Claimant's lower extremities, and neither medical consultant had the benefit of Claimant's testimony. Additionally, it is not the court's role to address an issue in the first instance that the ALJ failed to consider. *See Radford v Colvin*, 734 F.3d 288, 296 (4th Cir. 2013) (citing *Hancock v. Astrue*, 667

10

F.3d 470, 472 (4th Cir. 2012) ("In reviewing for substantial evidence, [the court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ.")).

The ALJ determined Claimant was capable of light work, which typically involves "a good deal of walking or standing," 20 C.F.R. § 404.1567(b), generally for approximately six hours in an eight-hour workday, SSR 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983). Given Claimant's testimony and medical records discussed above, Claimant's alleged limited ability to stand and walk, due to a need to elevate her legs to alleviate swelling in her lower extremities, was a contested function that the ALJ should have directly addressed, and the court cannot trace the ALJ's reasoning from the RFC assessment. *See Dowling v. Comm'r of Soc. Sec.*, 986 F.3d 377, 388–89 (4th Cir. 2021) (finding error where the ALJ failed to discuss the extent to which sitting problems impacted the claimant's ability to perform sedentary work, where the ability to sit was a contested function); *Moore v. Kijakazi*, No. 5:20-CV-627-RJ, 2022 WL 834295, at *4 (E.D.N.C. Mar. 21, 2022) (remanding case for further proceedings where the ALJ failed to properly assess how Claimant's alleged difficulty walking impacted her ability to perform a reduced range of light work, where Claimant's ability to walk was a contested function). Accordingly, remand is required for the ALJ to perform a function-by-function assessment of Claimant's ability to stand and walk in light of Claimant's alleged need to elevate her legs to alleviate swelling in her lower extremities. The court declines to address the other issues raised in the briefing.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings, [DE-21], is ALLOWED, Defendant's Motion for Judgment on the Pleadings, [DE-23], is DENIED, and this matter is REMANDED to the Acting Commissioner, pursuant to sentence four of § 405(g), for

11

further proceedings consistent with this Order.

So ordered, this the __16__ day of September 2022.

Robert B. Jones, Jr.
United States Magistrate Judge